UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| WILLIAM E. FREDERICK, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | CAUSE NO.: 1:17-CV-68-TLS |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) ) ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

The Plaintiff, William E. Frederick, seeks review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying his application for disability insurance benefits and for supplemental security income. The Plaintiff argues that the Commissioner wrongfully denied him disability benefits and supplemental security income and erred by failing to incorporate limitations from all of his medically determinable impairments, both severe and non-severe, into his Residual Functional Capacity and erred in failing to consider the combined impact of said impairments.

**BACKGROUND**

**A.      Procedural Background**

On July 1, 2013, the Plaintiff filed his Title II application for a period of disability and disability insurance benefits, as well as a Title XVI application for supplemental security income, alleging disability beginning on December 2, 2011. (R. 16.) His claims were denied initially on November 1, 2013, and upon reconsideration on December 31, 2013. (*Id.*) On July 2,

2015, the Plaintiff appeared with counsel and testified at a hearing before an administrative law judge (ALJ). (*Id.*) Sharon D. Ringenberg, a vocational expert, also appeared and testified at the hearing. (*Id.*) On November 9, 2015, the ALJ denied the Plaintiff's application, finding he was not disabled prior to his date last insured, March 31, 2014. (R. 16–30.) On December 30, 2016, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied the Plaintiff's request for review of the ALJ's decision. (R. 1–3.)

On February 26, 2017, the Plaintiff filed this claim [ECF No. 1] in federal court against the Acting Commissioner of the Social Security Administration.

## THE ALJ'S FINDINGS

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. § 423(d)(2)(A).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the ALJ found that the Plaintiff has been unable to engage in SGA from his alleged onset date, December 2, 2011, to his date last insured, March 31, 2014). (R. 18.)

In step two, the ALJ determines whether the claimant has a severe impairment limiting his ability to do basic work activities under § 404.1520(c). In this case, the ALJ determined that the Plaintiff had multiple severe impairments, including obesity; osteoarthritis; diabetes mellitus with neuropathy, chronic obstructive pulmonary disease; sleep apnea; gastroesophageal reflux disease (GERD); cervical disc disease, status post surgery; a history of B cell lymphoma; hypertension; bipolar disorder; and intermittent explosive disorder. (R. 18–19.) The ALJ found that these impairments caused more than minimal limitations in the Plaintiff's ability to perform the basic mental and physical demands of work and had lasted for at least twelve months as required under the statute. (R. 19.) The ALJ found that the Plaintiff's medically determinable impairment of mild hearing loss was not a severe impairment because it did not cause more than minimal functional limitations. (*Id.*)

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of the [the] listings in appendix 1 . . . ." § 404.1520(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, there is a presumption of disability "without considering [the claimant's] age, education, and work experience." § 404.1520(d). But, if the impairment(s), either singly or in combination, fall short, the ALJ must proceed to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things he can still do, despite his limitations—to determine whether he can perform "past relevant work," § 404.1520(a)(4)(iv), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." § 404.1520(a)(4)(v).

The ALJ determined that the Plaintiff's impairments did not meet or equal any of the listings in Appendix 1 and that he had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) as follows:

> [T]he claimant has the capacity to lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk 6 hours of an eight-hour shift; and sit 6 hours of an eight-hour shift. The claimant can sit or stand at least 20 minutes each. The claimant can never climb ladders, ropes, or scaffolds but can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant must avoid concentrated exposure to pulmonary irritants such as fumes, odors, dust, gases, poorly ventilated areas, and chemicals. The claimant is limited to simple routine tasks with a relatively unchanging setting and process. He can tolerate no contact with the general public, and only brief and superficial contact with coworkers and supervisors.

(R. 24.)

After analyzing the record, the ALJ concluded that the Plaintiff was not disabled from his alleged onset date to his date last insured. The ALJ evaluated the objective medical evidence and the Plaintiff's subjective symptoms. In coming to this determination, the ALJ reviewed in great detail the Plaintiff's alleged physical symptoms and impairments, including diabetes, obesity, degenerative disk disease (cervical and lumbar), ongoing numbness and pain in the upper extremities, mild nerve root compression, mild to moderate spinal canal stenosis, degenerative changes to his right knee, B cell lymphoma, chronic pulmonary insufficiency, and sleep apnea. (R. 19–21.) The ALJ also considered in detail the Plaintiff's alleged mental symptoms and impairments, including bipolar disorder, intermittent explosive disorder, difficulty maintaining social functioning, and difficulty concentrating.

The ALJ found that the Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. (R. 25.) But, the ALJ found that the Plaintiff's testimony and prior statements regarding the intensity, persistence, and limiting effects of these symptoms were "not entirely credible." (*Id.*) The Plaintiff and his wife testified

regarding his level of pain and the functional restrictions on the Plaintiff's daily activities. However, the ALJ noted both that the Plaintiff's claims regarding the intensity, persistence, and limiting effects of his symptoms were disproportionate with the objective medical evidence and that other parts of the Plaintiff's testimony were incompatible with his claimed level of incapacity, undermining the Plaintiff's credibility. (R. 25–28.) For example, the Plaintiff testified that "he sits or lies down nearly all the time," but there was no objective evidence of the muscle atrophy "that would be expected of someone who was as sedentary as the claimant testified." (R. 26.) The Plaintiff also testified that he was able to complete a three-mile walk in a half hour and, in 2013, told his doctor he had been cutting down a tree, behavior that is inconsistent with his testimony regarding the intensity, persistence, and limiting effects of his symptoms. (R. 25–26.)

The Plaintiff had past relevant work as an automotive technician (medium as usually performed and heavy exertion as performed by the Plaintiff), scrap handler (heavy both as usually performed and as actually performed), and forklift operator (medium both as usually performed and as actually performed). (R. 28.) Thus, the ALJ concluded that the Plaintiff was not capable of performing any past relevant work. (*Id.*) However, relying on the vocational expert's testimony, the ALJ found that "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (R. 29.) Thus, the ALJ found that the Plaintiff was not disabled as defined in the Social Security Act since his alleged onset date. (*Id.*)

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus, the Court will affirm the Commissioner's finding of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court reviews the entire record; however it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 608. The court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and [her] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address

every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). However, if substantial evidence supports the ALJ's determination, the decision must be affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

The Plaintiff argues that the ALJ failed to incorporate limitations into his RFC to account for all of his medically determinable impairments, both severe and non-severe. Specifically, the Plaintiff argues that his RFC does not account for limitations in concentration, persistence, and pace as a result of his mental impairments; limitations concerning exposure to light to accommodate the Plaintiff's photophobia secondary to his migraine headaches; limitations concerning neck rotation, flexion, and extension to accommodate the Plaintiff's range of motion deficits secondary to his cervical degenerative disk disease and neck surgery; limitations concerning handling and fingering limitations; and limitations regarding breaks for Plaintiff's need to nap. The Plaintiff also argues that, because these limitations were not properly incorporated into his RFC, the hypothetical posed to the vocational expert regarding existing jobs that the Plaintiff could perform was flawed.

### A.      Concentration, Persistence, and Pace

The ALJ stated that "[w]ith regard to concentration, persistence or pace, the claimant has moderate difficulties due to mental impairments," although those difficulties did not meet or

7

medically equal the severity of one of the listed impairments. (R. 22–23.) The ALJ considered the Plaintiff's allegations of his short attention span of no more than 10 minutes at a time; his need to take breaks and naps during the day due to his pain, physical impairments, and medication; and his mood swings due to his bipolar disorder with periods of depression. The ALJ also considered the objective medical evidence regarding the Plaintiff's mental impairments, which "support[ed] a finding of no more than moderate difficulty with sustaining both social functioning and concentration, persistence, or pace." (R. 27.) In the Plaintiff's RFC, the ALJ accounted for the Plaintiff's decreased social functioning by limiting him to only superficial contact with coworkers and supervisors and no contact with the general public. The ALJ further reasoned that because the RFC limited the plaintiff "to simple, routine tasks with unchanging setting and process," it would be "easier and quicker for him to get back on task" after a "break in concentration." (*Id.*)

The Seventh Circuit has "repeatedly rejected the notion that . . . confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Yurt v. Colvin*, 758 F.3d 850, 858–59 (7th Cir. 2014); *see also Stewart v. Astrue*, 561 F.3d 679, 985 (7th Cir. 2009) (noting repeated rejection of the contention that "restricting the inquiry to simple, routine tasks that do not require constant interactions with coworkers or the general public" accounts for limitations in concentration, persistence, and pace); *Craft*, 539 F.3d at 677–78 (restriction to unskilled, simple work insufficient to account for difficulties with memory, concentration, and mood swings). Thus, the RFC does not properly account for all of the Plaintiff's limitations.

Moreover, the Seventh Circuit has "stated repeatedly that ALJs must provide vocational experts with a complete picture of a claimant's residual functional capacity, and vocational

experts must consider deficiencies of concentration, persistence, and pace." *Jelinek v. Astrue*, 662 F.3d 805, 813 (7th Cir. 2011). When the ALJ posed a hypothetical to the vocational expert regarding the existence of other jobs of sufficient number in the economy that the Plaintiff could perform, the ALJ referenced only the limitations in the RFC and did not reference the fact that the Plaintiff had difficulties with concentration, persistence and pace.

Failure to incorporate references to concentration, persistence, and pace in this manner in a hypothetical to a vocational expert may be excusable if a medical expert testifies and "effectively translate[s] an opinion regarding the claimant's mental limitations into an RFC assessment." *See Milliken v. Astrue*, 397 F. App'x 218, 221 (7th Cir. 2010). However, the instant case is different. The psychologist who examined the Plaintiff said nothing about limiting the claimant specifically to "simple routine tasks with a relatively unchanging setting and process." *See Mollett v. Astrue*, No. 3:11-CV-238, 2012 WL 3916548, at *9 (N.D. Ind. Sept. 7, 2012) (finding *Milliken* inapplicable where "[t]he ALJ's hypothetical did not ask the [vocational expert] to accept the limitations of any particular physician; rather, [the ALJ] crafted his own RFC based on his opinion of the record as a whole"); *Potrebic v. Colvin*, 2:13-CV-126, 2014 WL 4722525, at *7 (N.D. Ind. Sept. 22, 2014) (remanding where "the ALJ did not rely on any medical expert to translate Plaintiff's moderate limitations in concentration, persistence, and pace into the functional limitation to 'simple, routine, and repetitive tasks'"). Moreover, by finding that that the Plaintiff had moderate difficulty with concentration, persistence, or pace, the ALJ's conclusion differed from the psychologist's conclusion that the Plaintiff's concentration was "adequate." (R. 1536); *see Manning v. Astrue*, 2013 WL 6095599, at *8 (N.D. Ind. Nov. 20, 2013) (finding *Milliken* not applicable when "the ALJ flatly rejected [the expert's] opinion that [the claimant] had 'mild,' rather than 'moderate,' restrictions in social functioning").

9

"When the hypothetical question is fundamentally flawed because it is limited to the facts presented in the question and does not include all of the limitations supported by medical evidence in the record, the decision of the ALJ that a claimant can adjust to other work in the economy cannot stand." *Young v. Barnhart*, 362 F.3d 995, 1005 (7th Cir. 2004). Thus, the Court must remand this case for further consideration. On remand, the ALJ should ensure that any limitations found to exist are adequately incorporated into the Plaintiff's RFC and that any hypotheticals posed to a vocational expert adequately apprise the expert of each limitation. Because the Court is remanding on this issue, the Court need not consider the remainder of the parties' arguments.

## CONCLUSION

Accordingly, the Court REVERSES and REMANDS this case for further proceedings in accordance with this Opinion and Order.

SO ORDERED on November 14, 2017.

       s/ Theresa L. Springmann
       CHIEF JUDGE THERESA L. SPRINGMANN
       UNITED STATES DISTRICT COURT